**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br>SIMA SCHWARTZ<br><br>      Debtor | Chapter 7<br>Case No. 06-42476-MSH |
| SIMA SCHWARTZ<br><br>      Plaintiff<br><br>v.<br><br>HOMEQ SERVICING, AGENT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE and DEUTSCHE BANK NATIONAL COMPANY, AS TRUSTEE<br><br>      Defendants | Adversary Proceeding<br>No. 07-04098 |

**MEMORANDUM OF DECISION AND ORDER**

After the plaintiff, Sima Schwartz, presented her case in chief during the first day of the trial in this adversary proceeding, upon oral motion of the defendants, HomEq Servicing and Deutsche Bank National Trust Company, as Trustee, I granted judgment on partial findings in favor of the defendants on all counts of the complaint, pursuant to Fed. R. Civ. P. 52(c), made applicable to this proceeding by Fed. R. Bankr. P. 7052.   Ms. Schwartz then moved for a new trial as a result of which judgment was vacated on count I of the complaint only.   *Schwartz v. HomEq Servicing (In re Schwartz)*, 2011 WL 1331963 (Bankr. D. Mass. Apr. 7, 2011).   In count I, Ms. Schwartz alleges that the May 24, 2006 foreclosure sale of her home by Deutsche was invalid because Deutsche did not own the mortgage on

1

the property at the relevant time.[1]   I reopened the trial so that the defendants could present their case with respect to that count, which they did on June 1, 2011.   Based on the evidence and legal submissions presented by the parties, my findings of fact, conclusions of law and order are set forth below.

### Jurisdiction and Standing

Core jurisdiction over this case is conferred upon the bankruptcy court by 28 U.S.C. § 157(b)(2)(G) and (O).   *See Atighi v. DLJ Mortg. Capital, Inc. (In re Atighi)*, 2011 WL 3303454, at *3 (B.A.P. 9th Cir. Jan. 28, 2011).   Ms. Schwartz's standing to seek relief is based on her property interest in light of the alleged wrongful foreclosure.   *Brae Asset Fund, L.P. v. Kelly*, 223 B.R. 50, 56 (D. Mass. 1998).

### Legal Framework

Mass. Gen. Laws ch. 244, § 14 establishes the procedure for a mortgagee to foreclose a mortgage by exercise of the statutory power of sale.   The statute provides that prior to a foreclosure sale a notice of the sale must appear weekly for three consecutive weeks in a newspaper either published in or generally circulated in the city or town where the property is located.   The Massachusetts Supreme Judicial Court has recently clarified that a foreclosing mortgagee must hold the mortgage as of the date that the first notice of sale is published.   *U.S. Bank Nat. Ass'n v. Ibanez*,

---

[1] The complaint is unclear as to the relief Ms. Schwartz seeks as a result of the allegedly invalid foreclosure.   In addition to the allegation that the defendants did not own the mortgage, Ms. Schwartz alleges that she was damaged by the foreclosure sale, which "was conducted fraudulently, in bad faith" and to her detriment.   I previously found that Ms. Schwartz failed to produce any evidence of the defendants' intent to defraud her.   In addition, Ms. Schwartz failed to establish the extent of her damages or that the foreclosure sale was conducted in bad faith.   Though Ms. Schwartz does not expressly request a declaratory judgment as to the validity of the foreclosure, based on the allegation of invalidity in the complaint, and the parties' arguments in the course of trial, I will consider count I of the complaint to be a request for a declaratory judgment that the foreclosure sale was invalid.

458 Mass. 637, 941 N.E.2d 40 (2011).   If the party intending to foreclose the mortgage is not the original mortgagee, a typical state of affairs when a mortgage loan is owned by the trustee of a securitized pool of mortgage loans, then the foreclosing mortgagee must hold a valid assignment of the mortgage prior to publishing the first sale notice.

### The Defendants' Case

It is undisputed that Deutsche was not the original mortgagee of the mortgage on Ms. Schwartz's home, so it must prove that the mortgage was assigned to it prior to the date when the first foreclosure notice was published.   As discussed in the memorandum and order on the plaintiff's motion for a new trial, while the evidence established that an assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") to Deutsche was executed on May 23, 2006, the day before the foreclosure sale, this assignment, being well after the notice of foreclosure sale was first published, did not confer on Deutsche the power to foreclose on May 24.   The Supreme Judicial Court in *Ibanez*, however, offered an alternative method for a party to acquire sufficient rights in a mortgage to qualify to foreclose:

> Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder.

*Ibanez*, 458 Mass. at 651.

With this in mind, the defendants introduced into evidence at trial all of the agreements tracking the transfer of Ms. Schwartz's mortgage loan from its originator, First NLC Financial Services, LLC ("First NLC"), to Deutsche, complete with the necessary schedules of the pooled mortgage loans specifically identifying her mortgage as being among those transferred.   The

3

defendants argue that these agreements, together with other evidence introduced by them, establish that Deutsche was the holder of the mortgage well in advance of the first publication of the notice of sale.

At trial, Ronaldo Reyes, a Deutsche vice president, testified that he had management responsibility over the administration of the Morgan Stanley Home Equity Loan Trust 2005-4 (the "Trust") and that Deutsche had always been the trustee of the Trust. He testified that in his capacity as vice president he had access to the books and records of the Trust and was qualified to authenticate and testify about the documents admitted into evidence by the defendants. During the course of his testimony, Mr. Reyes authenticated executed copies of each of the agreements discussed below, and demonstrated that Ms. Schwartz's mortgage loan was included on the mortgage loan schedules attached as exhibits to several of the agreements. Mr. Reyes testified that each was used in the ordinary course of Deutsche's business as trustee of the Trust.

The following documents were admitted into evidence: (i) the mortgage on Ms. Schwartz's home; (ii) the original promissory note executed by Ms. Schwartz, which Mr. Reyes noted was endorsed in blank by First NLC; (iii) the Amended and Restated Mortgage Loan Purchase Agreement (the "Loan Purchase Agreement") dated as of September 1, 2005 by and between Morgan Stanley Mortgage Capital, Inc. ("MS Mortgage Capital") and First NLC; (iv) the Assignment and Conveyance Agreement dated September 29, 2005, by and between First NLC and MS Mortgage Capital; (v) the Bill of Sale dated November 29, 2005 by and between MS Mortgage Capital and Morgan Stanley ABS Capital I Inc. ("MS ABS Capital"); and (vi) the Pooling and Servicing Agreement (the "PSA") dated as of November 1, 2005 by and among MS ABS Capital, HomEq Servicing Corporation, JPMorgan Chase Bank, National Association, First NLC, LaSalle Bank National Association and Deutsche. Mr. Reyes also testified regarding a custodial log that was admitted into evidence for the purpose of

4

proving that Ms. Schwartz's loan documents were in Deutsche's custody prior to the date when the first notice of foreclosure sale was published.

**Findings of Fact**[2]

1. On July 22, 2005, Ms. Schwartz refinanced the mortgage loan on her property at 23 Sigel Street, Worcester, Massachusetts, executing a promissory note in the amount of $272,000 payable to First NLC and a mortgage securing her obligation under the note naming MERS, solely as nominee for First NLC, its successors and assigns, as mortgagee.

2. The mortgage, which was duly recorded at the Worcester District Registry of Deeds, includes the statutory power of sale under Mass. Gen. Laws. ch 183, § 21 which is invoked by reference to the statute and which permits a mortgagee to foreclose a mortgage by public auction sale of the property upon the mortgagor's default in performance or breach of any conditions thereof.

3. On May 3, May 10 and May 17, 2006, a notice of foreclosure sale was published in the Worcester Telegram and Gazette stating that "Deutsche Bank National Trust Company, as Trustee," the "present holder" of the mortgage, intended to foreclose the mortgage by public sale of Ms. Schwartz's property on May 24, 2006.

4. On May 23, 2006, Liquenda Allotey, described as a vice president of MERS, executed an Assignment of Mortgage for the purpose of assigning the mortgage from MERS to "Deutsche Bank National Trust Company, as Trustee."

5. Deutsche, in its capacity as trustee of the Trust,[3] conducted the foreclosure sale as scheduled on May 24, 2006, bid in its mortgage debt and purchased the property.

---

[2] Any finding of fact which should more properly be considered a conclusion of law, and vice versa, shall be deemed as such.

[3] The documents pertaining to the foreclosure sale identify Deutsche as "Deutsche Bank National

5

6. In its answer, Deutsche admitted that a foreclosure deed conveying the property to itself was recorded on October 13, 2006.   There has been no evidence presented of any subsequent conveyance of the property and hence I find that Deutsche remains the record owner of the Sigel Street property.

7. As she testified on the first day of trial, Ms. Schwartz continues to reside in the Sigel Street Property.

8. The original promissory note executed by Ms. Schwartz was endorsed in blank by an officer of First NLC.

9. The original mortgagee as identified in the mortgage on Ms. Schwartz's home was MERS, as nominee for First NLC, its successors and assigns.

10. In accordance with Section 2 of the Loan Purchase Agreement, First NLC agreed to sell "Mortgage Loans" to MS Mortgage Capital.

11. The Loan Purchase Agreement defines a "Mortgage Loan" as

    An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the applicable Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, Servicing Rights and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding replaced or repurchased mortgage loans.

12. On September 29, 2005, by way of the Assignment and Conveyance Agreement, First NLC sold, transferred, assigned, set over and conveyed to MS Mortgage Capital "all right, title and interest of, in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as <u>Exhibit A</u>."

13. Ms. Schwartz's mortgage loan was listed on the exhibit attached to the Assignment and Conveyance Agreement.

---

Trust Company, as Trustee" without identifying the trust.

14. First NLC, therefore, transferred all of its right, title and interest in Ms. Schwartz's mortgage loan to MS Mortgage Capital on November 29, 2005.

15. By the Bill of Sale dated November 29, 2005, MS Mortgage Capital, as the "Seller," transferred to MS ABS Capital "all the Seller's right, title and interest in and to the Mortgage Loans described on Exhibit A attached hereto."

16. Ms. Schwartz's mortgage loan was listed on Exhibit A to the Bill of Sale.

17. MS Mortgage Capital, therefore, transferred its entire interest in Ms. Schwartz's mortgage loan to MS ABS Capital on November 29, 2005.

18. Section 2.01 of the PSA, which was dated November 1, 2005, provides that the MS ABS Capital, as "Depositor,"

> concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to [Deutsche] for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund, and the Trustee, on behalf of the Trust, hereby accepts the Trust Fund.

19. The "Trust Fund" includes all of the mortgage loans listed on an attached mortgage loan schedule.

20. Ms. Schwartz's mortgage loan was listed on the mortgage loan schedule attached to the PSA.

21. While the PSA provides that the mortgage loans were transferred from MS ABS Capital to Deutsche, "concurrently with the execution and delivery hereof" on November 1, 2005, the Bill of Sale provides that MS ABS Capital did not acquire the mortgage loans until November 29, 2005. The November 2009 PSA indicates, however, that the transaction in which MS ABS Capital would transfer the loans to Deutsch, as trustee of the Trust, would not be consummated until November 29, 2005, which is defined as the "Closing Date." Therefore, MS ABS Capital transferred Ms. Schwartz's mortgage loan to Deutsche, as trustee of the Trust, on the Closing Date of November 29, 2005, which is the same date as the Bill of Sale by which MS ABS Capital acquired the loan from MS Mortgage Capital.

7

22. Section 2.01(b) of the PSA provides that if

> any Mortgage has been recorded in the name of Mortgage Electronic Registration System, Inc. ("MERS") or its designee, no Assignment of Mortgage in favor of the Trustee will be required to be prepared or delivered and instead, the applicable Servicer shall take all reasonable actions as are necessary at the expense of the applicable Originator to the extent permitted under the related Purchase Agreement and otherwise at the expense of the Depositor to cause the Trust to be shown as the owner of the related Mortgage Loan on the records of MERS for the purpose of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

23. Thus MS ABS Capital did not assign to Deutsche the mortgage on Ms. Schwartz's home in connection with the transaction through which it transferred Ms. Schwartz's mortgage loan pursuant to the PSA.

24. In the chain of transactions by which Ms. Schwartz's mortgage loan was sold, initially by First NLC to MS Mortgage Capital, next by MS Mortgage Capital to MS ABS Capital and finally by MS ABS Capital to Deutsche, the seller sold all of its right, title and interest in the mortgage loans being transferred. However, as the mortgage itself was originally in the name of MERS as mortgagee, and not First NLC, First NLC never held legal title to the mortgage and could not have transferred such title to MS Mortgage Capital. Consequently, neither MS ABS Capital nor Deutsche, as successors to First NLC and MS Mortgage Capital, obtained legal title to the mortgage. This is consistent with § 2.01 of the PSA quoted above.

25. As of November 29, 2005, the Closing Date defined in the PSA, MERS continued to hold legal title to the mortgage on Ms. Schwartz's home as nominee for First NLC, its successors and assigns.

26. MERS continued to hold legal tile to the mortgage until May 23, 2006, when it assigned the mortgage to Deutsche.

27. The custodial log establishes that Deutsche received Ms. Schwartz's mortgage loan documents, including the promissory note and mortgage instrument, on September 15, 2005 (presumably in anticipation of the November loan sale), and retained custody of these documents until March 27,

8

2006, when they were sent to HomEq. The custodial log indicates that the documents were sent to HomEq for servicing and lists the reason for the transfer as "foreclosure." According to the custodial log, the loan documents were returned to Deutsche on May 24, 2006, the day of the foreclosure sale.

## Conclusions of Law

In *In re Marron*, 2011 WL 2600543, at *5 (Bankr. D. Mass. June 29, 2011), I held that where a loan was secured by a mortgage in the name of MERS, even when the loan itself changed hands several times, MERS remained the mortgagee in its capacity as nominee for the original lender, its successors and assigns.[4] As MERS was the mortgagee, it had the authority to assign the mortgage to the foreclosing entity. In this case too, while Ms. Schwartz's loan passed from hand to hand, MERS remained the mortgagee throughout. While MERS held only bare legal title to the mortgage on behalf of Deutsche, the successor to First NLC, until it assigned the mortgage to Deutsche on May 23, 2006, only MERS had the authority to foreclose.

Having determined that MERS, and not Deutsche, held legal title to the mortgage on Ms. Schwartz's home mortgage as of May 3, 2006, when the notice of the foreclosure sale of her home was first published, it follows that Deutsche did not have the right to exercise the statutory power of sale and to foreclose the mortgage. *See, e.g., Novastar Mortgage, Inc. v. Safran*, 79 Mass. App. Ct. 1124, 948 N.E.2d 917 (2011) (finding, in a post-foreclosure eviction proceeding, that the foreclosing entity

---

[4] The sophisticated financial minds who wrought the MERS regime sought to simplify the process of repeatedly transferring mortgage loans by obviating the need and expense of recording mortgage assignments with each transfer. No doubt they failed to consider the possibility of a collapse of the residential real estate market, the ensuing flood of foreclosures and the intervention of state and federal courts. Professor Alex Tabarrok of George Mason University has observed "[t]he law of unintended consequences is when a simple system tries to regulate a complex system." Alex Tabarrok, *The Law of Unintended Consequences*, Marginal Revolution (Jan. 24, 2008, 7:47 am), http://marginalrevolution.com/marginalrevolution/2008/01/the-law-of-unin.html.

had the burden to prove its title to the property by establishing that the mortgage had been assigned to it by MERS "at the critical stages of the foreclosure process."). By publishing notice of the foreclosure sale when it was not the mortgagee, Deutsche failed to comply with Mass. Gen. Laws ch. 244, § 14, and thus its foreclosure sale is void. *Ibanez*, 438 Mass. at 646-47.[5] A declaratory judgment to that effect shall enter on count I of the complaint.

    SO ORDERED.

At Worcester, Massachusetts this 22nd day of August, 2011.

                              By the Court,

                              */s/ Melvin S. Hoffman*

                              Melvin S. Hoffman
                              U.S. Bankruptcy Judge

      Counsel Appearing:   David G. Baker
                                   Boston, MA
                                   for the plaintiff

                                   Christopher Matheson
                                   Richard C. Demerle and
                                   Christopher Decosta
                                   Michienzie & Sawin, LLC
                                   Boston, MA
                                   for both defendants

                                   and

---

[5] Deutsche presented sufficient evidence to prove that either it or HomEq, its agent, had *possession* of both the Schwartz mortgage and promissory note as of May 3, 2011. The note was endorsed in blank, which gave Deutsche the right to enforce the note. The fact that Deutsche had possession of the mortgage, however, is irrelevant to its status as mortgagee. While a promissory note endorsed in blank may be enforced by the party in possession of the note, this is not the case with a mortgage. "Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor." *Ibanez*, 458 Mass at 649. Deutsche had not received a written assignment of the mortgage from MERS prior to May 3, 2011. The fact that it had possession of the mortgage instrument did not render Deutsche the mortgagee and thus it lacked the power to sell the property.

>Gary A. Barnes
>Sarah-Nell Walsh
>Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
>Atlanta, GA
>for Defendant Deutsche Bank National Trust Company, as Trustee

11